**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No. ______________________**

| | |
|---|---|
| **LUCKY 415, LLC,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**CASIE WAGONER and XPMKG, LLC,**<br><br>**Defendants.** | **COMPLAINT** |

Plaintiff Lucky 415, LLC ("Lucky 415" or "Plaintiff"), by and through undersigned counsel, alleges the following against Defendants Casie Wagoner ("Wagoner") and XPMKG, LLC ("XPMKG", and collectively with Wagoner, "Defendants"):

## NATURE OF THE ACTION

1. This action arises from Defendants' wrongful diversion of Plaintiff's business opportunities, customers, goodwill, trade name, branding, website, confidential business information, and revenues for Defendants' own benefit.

2. While serving in an officer role and position of trust and authority with respect to Lucky 415, Wagoner formed and operated a competing entity through which

she appropriated customer relationships, business opportunities, branding, goodwill, and other assets belonging to Lucky 415.

3. After representing to Lucky 415's members that its primary customers were no longer doing business with Lucky 415 and that the company effectively had no viable future, Wagoner continued servicing those same customers through XPMKG while continuing to use the Lucky XP name, website, branding, subcontractor network, and goodwill developed at Plaintiff's expense.

4. Plaintiff seeks damages, disgorgement of profits, injunctive relief, constructive trust, punitive damages, attorneys' fees where available, and all other relief permitted by law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a).

6. Plaintiff Lucky 415, LLC is a limited liability company whose members are Robby Howerton and Franklin Amburn.

7. Robby Howerton is a citizen of North Carolina and resides in Winston-Salem, North Carolina.

8. Franklin Amburn is a citizen of North Carolina and resides in Banner Elk, North Carolina.

9. Accordingly, Plaintiff Lucky 415, LLC is a citizen of North Carolina.

10. Upon information and belief, Defendant Wagoner is a citizen of Indiana.

11. Upon information and belief, Defendant XPMKG, LLC is an Indiana limited liability company whose members are citizens of Indiana.

12. Wagoner purposefully availed herself of the privilege of conducting business within North Carolina by directing and participating in substantial business activities in the State on behalf of Lucky 415 and thereafter through her newly formed entity.

13. During 2025, Wagoner personally managed, coordinated, and serviced customer relationships and projects involving key customers and vendors of Plaintiff's located in or conducting substantial operations within North Carolina.

14. In June 2025, Wagoner traveled to North Carolina for multiple days in connection with a two customer project kickoffs, attended project events within the State, worked at event locations in North Carolina, and coordinated activities relating to those projects and customers.

15. Wagoner's work for North Carolina customers and projects generated substantial revenue. Approximately forty percent (40%) of Lucky 415's 2025 revenue, was attributable to business activities.

16. The claims asserted herein arise directly from Wagoner's management of, and alleged diversion of, business opportunities, customer relationships, goodwill, and revenue streams that were substantially connected to North Carolina.

17. Upon information and belief, after creating XPMKG, LLC and/or other entities through which she continued operating under the "Lucky XP" name, Wagoner

continued to solicit, service, and derive revenue from the same customer relationships and business opportunities that had previously generated substantial revenue within North Carolina.

18. Upon information and belief, XPMKG has intentionally conducted business directed at North Carolina customers and has continued to exploit business relationships, goodwill, and commercial opportunities developed through Lucky 415's substantial North Carolina operations.

19. Defendants have further purposefully directed business activities toward North Carolina by operating and maintaining the Lucky XP website and related online business presence, which identifies a North Carolina address as a business location and holds itself out as conducting business from and within North Carolina.

20. By operating a business website identifying a North Carolina location, soliciting and promoting services to North Carolina customers, and continuing to exploit customer relationships and goodwill developed through substantial North Carolina business activities, Defendants have purposefully availed themselves of the benefits and protections of North Carolina law.

21. Defendants could reasonably anticipate being hauled into a North Carolina court because the conduct at issue was directed toward North Carolina customers and business opportunities, generated substantial revenue from North Carolina activities, and caused foreseeable injury to Plaintiffs arising from those activities.

22. Upon information and belief, Defendants continue to transact business with at least two (2) of Plaintiff's key customers for projects occurring within North Carolina and continue to receive revenue derived from those North Carolina activities.

23. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff believes its damages substantially exceed that amount and may exceed several million dollars.

24. This Court also has jurisdiction pursuant to 28 U.S.C. §§1331 and 1338 because Plaintiff asserts claims arising under the Lanham Act, including 15 U.S.C. §1125(a).

25. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred within this District and because Plaintiff is headquartered in this District and suffered injury within this District.

**PARTIES**

26. Plaintiff Lucky 415 is a North Carolina limited liability company.

27. Lucky 415 conducted business under the trade names "Lucky XP" and "Lucky XP Marketing and Promotions."

28. Defendant Wagoner is an individual residing in Indiana.

29. Defendant XPMKG is a limited liability company organized under Indiana law as of December 19, 2025.

30. Upon information and belief, Wagoner owns, controls, and operates XPMKG.

## FACTUAL ALLEGATIONS

31. Lucky 415 developed substantial goodwill and business relationships with certain customers.

32. Lucky 415 expended substantial funds and resources developing its website, trade names, branding, customer relationships, subcontractor network, and reputation in the marketplace.

33. Wagoner was entrusted with managing significant aspects of Lucky 415's operations and customer relationships.

34. Wagoner was an officer of Lucky 415 and held the role of Chief Marketing Officer.

35. Wagoner held herself out as Lucky 415's Chief Marketing Officer in, including but not limited to, signing contracts with customers as Lucky 415's Chief Marketing Officer.

36. In that capacity, Wagoner owed duties of loyalty, honesty, good faith, disclosure, and fair dealing to Lucky 415.

37. While occupying that position of trust and her role as an officer/Chief Marketing Officer of Lucky 415, Wagoner formed XPMKG and operated it in competition with Lucky 415.

38. Upon information and belief, Wagoner represented to Lucky 415 and its members that key customer relationships had ceased doing business with Lucky 415 and that continued operation of the company was no longer viable.

39. Beginning no later than May 2026, Wagoner represented to Franklin Amburn and Rob Howerton, the two members of Plaintiff, that Plaintiff's business operations were being wound down and that the Company's relationship with a key customer and related accounts was ending.

40. On or about May 21, 2026, Wagoner represented that she was in the process of closing company accounts, cancelling services, and shutting down operational systems used by Plaintiff. Defendant stated, among other things, that she had cancelled Grasshopper, would close additional accounts, and was working toward shutting down Plaintiff's remaining operations.

41. On or about May 24, 2026, Wagoner further represented that she was meeting with a representative of a key customer of Plaintiff in an effort to "close it out," that she had instructed her contacts to stop sending Plaintiff events, and that she was attempting to determine when all activity could be halted. Wagoner specifically represented that she had "spoke to our team that I work with regularly to have them stop sending us events" and was attempting to determine "when we can halt all activity."

42. Wagoner also repeatedly represented to Plaintiff that a key customer of Plaintiff was difficult to work with, that she had no intention of continuing work associated with those accounts, and that it only made sense to shut the business down.

43. Thereafter, on or about August 18, 2026, when Plaintiff's members, Franklin Amburn and Rob Howerton, sought information regarding outstanding receivables attributable to the aforementioned key customer and invoicing, Wagoner

refused to assist and discouraged further inquiry. Wagoner represented that she would not prepare or submit an outstanding invoice, stated that she had “no desire” to do so, asserted that “no one is going to come for more,” and cautioned that pursuing the matter could result in claims by the key customer relating to a purported “$2 million dollar project.”

44. Wagoner made these representations with the intent that Plaintiff rely upon them by refraining from investigating the status of the key customer relationship, refraining from pursuing outstanding receivables, refraining from continuing Lucky 415's operations, and refraining from taking steps to protect Plaintiff’s business opportunities and goodwill.

45. Upon information and belief, Wagoner’s representations regarding the termination of Lucky 415's business activities and the cessation of work associated with the key customer and related accounts were false when made.

46. Upon information and belief, while representing to Plaintiff that its operations were ending, Wagoner was simultaneously pursuing, performing, soliciting, or planning to continue substantially the same business activities through another entity and under the Lucky XP name and branding.

47. Wagoner further concealed material facts from Plaintiff, including the existence and operation of competing business activities conducted using Plaintiff’s customer relationships, trade names, goodwill, workforce, vendor network, and business opportunities.

48. Plaintiff reasonably relied upon Wagoner's representations and omissions because Wagoner was the individual responsible for managing the Company's day-to-day operations and had superior knowledge concerning customer relationships, invoicing, staffing, and ongoing business opportunities.

49. Those representations were false or materially misleading.

50. Instead, Wagoner continued servicing the same customers and business opportunities through XPMKG.

51. Defendants published and maintained a commercial website at https://luckymkg.com branded "LUCKY XP MARKETING & PROMOTIONS," which prominently used the Lucky XP trade name and marketed event staffing and marketing services under that name, including multiple pages titled "Marketing Materials in Lafayette, IN | Lucky XP," "Commercial Printing Services in Lafayette, IN | Lucky XP," "Blog - Lucky Marketing," and "About Us: Commercial Printing Company in Lafayette, IN."

52. The above referenced website additionally included that Defendants can be emailed at "info@lucky415.com," thereby inviting prospective customers to communicate through Lucky 415's email domain for projects marketed by Defendants.

53. Additionally, the address listed on the above referenced website on the "Contact Lucky XP" page is 247 Morgans Ridge Dr., Banner Elk, NC 28604. On other pages affiliated with the website, the address is listed as 148 Cooper River Dr. Mount Pleasant, NC, 29464.

54. Plaintiff's member, Franklin Amburn, resides at the address 247 Morgans Ridge Dr., Banner Elk, NC 28604, despite Defendants claiming that this address is affiliated with their business operations.

55. The repeated presence of Lucky 415's contact information and North Carolina addresses across multiple pages of its website (including "Contact Us," "About Us," and "Our Services") as recently as October 2026, demonstrates continued use of Lucky 415's indicia of source after formation and operation of XPMKG, LLC in Indiana.

56. Defendants' website pages, as recently as October 2026, used Lucky 415's "@lucky415.com" email and North Carolina addresses, including "148 COOPER RIVER DR. MOUNT PLEASANT NC, 29464" and "247 MORGANS RIDGE DR, BANNER ELK, NC, 28604, " alongside "LUCKY XP MARKETING & PROMOTIONS" branding. Defendants' website further framed Lucky XP as the active source of services by titling pages "Marketing Materials in Lafayette, IN | Lucky XP" and "Commercial Printing Services in Lafayette, IN | Lucky XP," and by footers stating "LUCKY XP MARKETING | 2024," thereby representing ongoing operations under Lucky XP.

57. Defendants' use of the Lucky XP name, North Carolina addresses (including an address that is owned by one of Plaintiff's members), and the former website operated by Plaintiff indicates Defendants intend to deceive Plaintiff's customers.

58. Upon information and belief, revenues associated with projects for at least two (2) customers were diverted from Lucky 415 and funneled through XPMKG.

59. Plaintiff has reason to believe that approximately $71,000 in costs were incurred by Lucky 415 in connection with customer projects for which Defendants retained the resulting revenue.

60. Defendants continued to use the Lucky XP trade name, branding, website, goodwill, labor network, vendor relationships, and other business assets belonging to Plaintiff.

61. The Lucky XP website continued operating using Wagoner's contact information while capitalizing upon goodwill developed through Plaintiff's business.

62. Defendants' conduct has damaged Plaintiff and unjustly enriched Defendants.

**FIRST CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Against Wagoner)**

63. Plaintiff incorporates the preceding allegations as if fully set forth herein.

64. Wagoner occupied a position of trust and confidence with Plaintiff.

65. Wagoner served as an officer of Lucky 415 and held the title Chief Marketing Officer, thus making her a de jure officer.

66. Wagoner represented to Plaintiff's key customers that she was Chief Marketing Officer of Lucky 415.

67. Wagoner owed fiduciary duties to Plaintiff.

68. Wagoner breached her fiduciary duties to Lucky 415 by, among other things, engaging in activities during her employment with Lucky 415 to compete with

Lucky 415, to divert customers of Lucky 415 to XPMKG or other entities, and to appropriate for herself, through XPMKG or otherwise, corporate opportunities that she had a duty to bring to Lucky 415, and to utilize assets of Lucky 415 in competition with Lucky 415.

69. Lucky 415 has been damaged as a direct and proximate result of Wagoner's breach of fiduciary duty.

70. Lucky 415 is entitled to recover compensatory damages, as well as disgorgement of profits and disgorgement of Wagoner's salary when employed by Plaintiff from Wagoner in an amount to be proven at trial in excess of $75,000.

71. Wagoner's breaches of fiduciary duty were willful, wanton, and malicious and Wagoner is therefore also liable for punitive damages.

## SECOND CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
## (Against Both Defendants)

72. Plaintiff incorporates the preceding allegations as if fully set forth herein.

73. Lucky 415 maintained ongoing business relationships and prospective economic relationships with customers and prospective customers.

74. Defendants knew of those relationships.

75. Defendants intentionally and unjustifiably interfered with those relationships by using Lucky 415's confidential information and customer contacts to divert business to XPMKG for their own benefit.

76. Defendants wrongfully interfered with Lucky 415's business relationships with its customers by inducing Lucky 415's customers to stop doing business with Lucky 415, to materially reduce their business with Lucky 415, or to breach their contractual relationships with Lucky 415.

77. Upon information and belief, one customer of Lucky 415 is refusing to pay an outstanding balance in excess of $450,000 to Lucky 415 at Wagoner's direction, despite having contractual payment obligations to effectuate said payment.

78. Defendants' conduct prevented Lucky 415 from continuing and expanding its business relationships with its customers.

79. Lucky 415 has suffered damages in an amount to be proven at trial as a direct and proximate result.

**THIRD CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Against Both Defendants)**

80. Plaintiff incorporates the preceding allegations as if fully set forth herein.

81. Lucky 415 maintained contractual relationships with various customers, including but not limited to statements of work and related business contracts.

82. Defendants knew of those contractual relationships.

83. Upon information and belief, Defendants intentionally induced at least two (2) customers to terminate, breach, or fail to renew those contracts for the benefit of XPMKG and to the detriment of Lucky 415.

84. If not for Defendants' interference, Lucky 415 would have continued its business and contractual relationships with its customers and would have continued to enter into additional contracts with those customers to the same extent as prior to Defendants' interference.

85. Defendants acted without justification.

86. Lucky 415 sustained damages in an amount to be proven at trial as a direct and proximate result.

**FOURTH CAUSE OF ACTION**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**
**(Against Both Defendants)**

87. Plaintiff incorporates the preceding allegations as if fully set forth herein.

88. Defendants' wrongful conduct alleged herein is in or affecting commerce and constitutes unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1.

89. Defendants' conduct includes, without limitation, the following acts: misappropriating Lucky 415's trade secrets; interfering with Lucky 415's customer contracts and business expectancies; and using Lucky 415's proprietary information to gain an unfair competitive advantage.

90. Wagoner utilized her time (while an employee of Lucky 415) and other assets of Lucky 415 to form and organize XPMKG, to compete unfairly with Lucky 415, and to solicit Lucky 415's customers to divert their business from Lucky 415 to XPMKG.

91. Defendants' activities evidence a plan and intent to divert Lucky 415's customers and business opportunities through the misuse of Lucky 415's confidential information and customer relationships, without justification or legitimate competitive basis.

92. Defendants' conduct was unethical, unscrupulous, substantially injurious, and had the capacity to deceive.

93. Lucky 415 has suffered actual injury as a direct and proximate result of Defendants' conduct.

94. Pursuant to N.C. Gen. Stat. §§ 75-1.1 and 75-16, Lucky 415 is entitled to recover treble damages.

95. Pursuant to N.C. Gen. Stat. § 75-16.1, Lucky 415 is entitled to recover its attorneys' fees.

**FIFTH CAUSE OF ACTION**
**FRAUD**
**(Against Wagoner)**

96. Plaintiff incorporates all preceding allegations as if fully set forth herein.

97. Wagoner made false representations and omitted material facts regarding customer relationships, business operations, and business opportunities on, at least, May 21, 2026, May 24, 2026, and August 18, 2026, as discussed in more detail above.

98. Wagoner knew such representations were false or acted with reckless disregard for their truth.

99. Plaintiff reasonably relied upon such representations.

100. As a direct and proximate result of Wagoner's fraudulent representations and concealment, Plaintiff failed to pursue business opportunities, failed to protect corporate assets and customer relationships, failed to collect revenues and receivables, and suffered substantial damages in an amount to be proven at trial.

101. Wagoner's conduct was intentional, willful, malicious, and undertaken in conscious disregard of Plaintiff's rights, entitling Plaintiff to recover compensatory damages, disgorgement of profits, punitive damages, equitable relief, attorney's fees where permitted by law, and such other relief as the Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**LANHAM ACT: TRADEMARK INFRINGEMENT,**
**FALSE ADVERTISING, AND UNFAIR COMPETITION**
**(Against Both Defendants)**

102. Plaintiff incorporates all preceding allegations as if fully set forth herein.

103. Lucky XP and Lucky XP Marketing and Promotions were trade names used by Plaintiff in commerce.

104. In commerce, Defendants made false and misleading statements of fact concerning Lucky XP's marks including by using the Lucky XP name, branding, website, and associated goodwill.

105. Such use has caused and will continue to cause confusion regarding affiliation, sponsorship, ownership, or source of services amongst the public and have deceived or had the capacity to deceive a substantial segment of consumers.

106. Plaintiff has been damaged by Defendants' conduct including an actual diversion of customers.

107. Plaintiff has also suffered damage to its reputation and goodwill.

108. Plaintiff is entitled to recover Defendants' profits, actual damages, enhanced damages, and attorneys fees as allowed by law.

109. Unless restrained, Defendants will continue causing irreparable harm.

WHEREFORE, Plaintiff prays that the Court:

1. Grant a trial by jury;

2. Enter judgment against Defendants jointly and severally;

3. Award compensatory damages in an amount to be determined at trial;

4. Award disgorgement of all profits received by Defendants from diverted business opportunities;

5. Impose a constructive trust over revenues and assets derived from the wrongful conduct;

6. Award treble damages under Chapter 75;

7. Award punitive damages where permitted by law;

8. Enter preliminary and permanent injunctive relief prohibiting further use of Plaintiff's trade names, branding, website, goodwill, and confidential information;

9. Order a full accounting of all revenues, expenses, invoices, payments, contracts, and customer relationships related to the diverted business;

10. Award costs, interest, and attorneys' fees as permitted by law; and

11. Grant such other relief as the Court deems just and proper.

This the 5th day of November, 2026.

*/s/ Alexandria B. Morgan*
Benjamin P. Hintze
N.C. State Bar No. 49270
bhintze@tuggleduggins.com
Alexandria B. Morgan
N.C. State Bar No. 59635
amorgan@tuggleduggins.com

*Attorneys for Plaintiff*

OF COUNSEL:
TUGGLE DUGGINS P.A.
P.O. Box 2888
Greensboro, NC 27402
Telephone: (336) 378-1431 / Facsimile: (336) 274-6590